# United States District Court

**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| HANI MOHAMMAD ASHOUR, individually and as representative of THE ESTATE OF DALAL HAMMAD ASHOUR, | § | |
| *Plaintiffs*, | § | Civil Action No. 4:25-cv-1097 |
| v. | § | Judge Mazzant |
| 24 HOUR FITNESS USA, LLC, | § | |
| *Defendant*. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is 24 Hour Fitness USA, LLC's ("24 Hour" or "Defendant") Motion for Summary Judgment (the "Motion") (Dkt. #28). Having considered the Motion and the relevant pleadings, the Court finds that the Motion should be **GRANTED**.

## BACKGROUND

This is a wrongful death case. On June 16, 2025, Dalal Hammad Ashour (the "Decedent") drowned to death in a swimming pool owned by 24 Hour. Decedent, tragically, suffered from a myriad of health complications, which included congestive heart failure, chronic systolic heart failure, type two diabetes, and the implantation of two pacemakers (Dkt. #28-4; Dkt. #28-5). On August 15, 2025, Plaintiff filed suit in the 471st Judicial District Court of Collin County, Texas, seeking recovery for Decedent's death (Dkt. #1-3 at p. 2). On October 7, 2025, 24 Hour removed the case to this Court pursuant to this Court's diversity jurisdiction under 28 U.S.C. § 1332 and in accordance with Local Rule CV-81 (Dkt. #1 at p. 1). In its argument for removal, 24 Hour alleged that Defendant Parker Central Plaza LTD ("Parker Central") was improperly joined to defeat diversity jurisdiction (Dkt. #7 at p. 4). On November 6, 2025, Plaintiff filed a Motion to Remand

the case back to state court (Dkt. #7). The Court additionally granted Plaintiff leave to amend her original petition to better conform to the federal pleading standards (Dkt. #14). Plaintiff filed an Amended Complaint on March 11, 2026 (Dkt. #15). Despite Plaintiff's Amended Complaint, the Court found that Parker Central was improperly joined and dismissed it from the suit, thereby denying Plaintiff's Motion to Remand (Dkt. #18).

On July 31, 2026, 24 Hour filed the present Motion alleging, among other things, that summary judgment is warranted as a matter of law in its favor because (1) it did not owe a duty to Decedent under Texas law; (2) its internal policies and procedures did not create or expand its duties, or create the applicable standard of care; (3) Plaintiff cannot establish proximate causation; (4) Plaintiff's premises liability claim is without competent evidence and a disguised negligent undertaking claim; and (5) Plaintiff signed a membership agreement with 24 Hour that contained a release of liability clause (Dkt. #28 at pp. 11, 15–16, 21, 24–34). On August 21, 2026, Plaintiff filed his Response arguing that summary judgment is not warranted because (1) 24 Hour, as a possessor of land open to the public for business, owed Decedent, 24 Hour's business invitee, a duty under Texas law to render the aid it reasonably could and knew how to give; (2) 24 Hour assumed a duty by undertaking a specific emergency-response system; and (3) genuine issues of material fact remain as to negligence per se, proximate causation, the assent and scope of the release of liability clause, and gross negligence (Dkt. #30 at pp. 18–22, 23–32). On August 28, 2026, 24 Hour filed its Reply (Dkt. #35).

## LEGAL STANDARD

Federal courts sitting in diversity apply state substantive law and federal procedural law. *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 437 (2010) (citing *Gasperini v.*

*Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996)). The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). Substantive law identifies which facts are material. *Id.* The trial court "must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment." *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The party seeking summary judgment bears the initial burden of informing the court of its motion and identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact. FED. R. CIV. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323. If the movant bears the burden of proof on a claim or defense for which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge the burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating

there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49). A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden. Rather, the Court requires "significant probative evidence" from the nonmovant to dismiss a request for summary judgment. *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (quoting *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978)). The Court must consider all of the evidence but "refrain from making any credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

**ANALYSIS**

Plaintiff attempts to hold 24 Hour liable under theories of Negligence, Negligence Per Se, Gross Negligence, and Premises Liability (Dkt. #15 at pp. 4, 7). On June 16, 2025, Decedent swam at the pool located in 24 Hour's facility at 3300 N. Central Expressway, Suite A, Plano, Texas 75074 (Dkt. #15 at ¶ 9). 24 Hour's pool does not have a lifeguard, and signage at the pool warns swimmers of this, essentially letting them know that you swim at your own risk (Dkt. #30 at p. 6; Dkt. #35-1; Dkt. #30-1 at p. 36). Sometime around 10:30 a.m., Decedent stopped moving and remained motionless and submerged for about two minutes (Dkt. #30 at p. 6; Dkt. #28-17 at p. 6). While 24 Hour has a policy where employees do bihourly walkthroughs of the premises, including the pool (Dkt. #30-3 at p. 7), it was another gym patron that first discovered Decedent (Dkt. #28 at p. 10). After a minute or two of gym patrons trying to pull Decedent out of the water, a trainer from 24 Hour heard the commotion. He went to the pool, helped pull Decedent out of the water, and immediately began cardiopulmonary resuscitation

("CPR") (Dkt. #30 at p. 6; Dkt. #28-10 at p. 4). It is undisputed that 24 Hour's "Code Blue" was not called and/or announced on the PA system and that an Automatic External Defibrillator ("AED") was not retrieved, despite 24 Hour having one, and despite its policy requiring an AED to be used when a patron suffers a cardiac event (Dkt. #30 at p. 6). Soon after Decedent was pulled out of the water, 911 was called, and 24 Hour's trainer continued CPR until EMS arrived at the pool, which was around 10:40 a.m.—only about seven minutes after Decedent was discovered and five minutes after 911 was called (Dkt. #30-4 at p. 10; Dkt. #30-9 at p. 25). EMS found pulseless electrical activity and a non-shockable rhythm (Dkt. #30 at p. 9). After continued resuscitation efforts, Decedent was pronounced dead (Dkt. #30 at p. 9).

## I. Housekeeping and Local Rules

As a preliminary matter, 24 Hour asserts that Plaintiff failed to comply with Local Rule CV-56(b), which requires a response to 24 Hour's Statement of Issues and Statement of Undisputed Material Facts (Dkt. #35 at p. 1 n.1; Dkt. #30). The rule provides that the Court will assume that the facts properly supported by Defendant's summary-judgment evidence are admitted to exist without controversy, except to the extent controverted in the responsive brief by proper summary-judgment evidence, and the Court will not scour the record in an attempt to unearth an undesignated genuine issue of material fact. LOCAL RULE CV-56(c). Because Plaintiff failed to meet the rule's procedural requirements, 24 Hour argues that the Court should not consider Plaintiff's factual assertions as establishing a genuine issue of material fact (Dkt. #35 at p. 1 n.1).

Even if Plaintiff failed to meet the rule's procedural requirements, the Court is not obliged to accept 24 Hour's argument. It is axiomatic that district courts have the discretion to enforce

their own local rules. *In re Adams*, 734 F.2d 1094, 1102 (5th Cir. 1984) (citation omitted). Therefore, courts may overlook a party's failure to abide by the local rules and choose to rule on a motion's merits instead. *Brooks v. Firestone Polymers, LLC*, No. 1:12-CV-325, 2014 WL 12713018, at *2 (E.D. Tex. Apr. 4, 2014) (citations omitted). Preferring to rule on the merits here, the Court will overlook Plaintiff's alleged failure to comply with Local Rule CV-56(b). As such, the Court turns to 24 Hour's Motion.

## II. Negligence, Negligence Per Se, and Gross Negligence

Plaintiff, in his First Amended Complaint,[1] asserts multiple causes of action against 24 Hour: Negligence, Negligence Per Se, Gross Negligence, and Premises Liability (Dkt. #15 at pp. 4–5, 7). The thrust of Plaintiff's Amended Complaint is that 24 Hour is liable for failing to use its resources in not calling a Code Blue, not monitoring the pool enough, and not retrieving and using an AED on Decedent—which if followed would have saved Decedent's life (*See* Dkt. #15; Dkt. #30 at pp. 6–18). At the outset, 24 Hour maintains that summary judgment is warranted in its favor because Texas law does not impose the duty that Plaintiff alleges 24 Hour breached (Dkt. #28 at p. 15). For the reasons addressed below, the Court agrees with 24 Hour.

### A. Common Law Negligence

Under Texas law, "[t]he elements of a negligence cause of action are a duty, a breach of that duty, and damages proximately caused by the breach of duty." *Doe v. Boys Club of Greater Dall., Inc.*, 907 S.W.2d 472, 477 (Tex. 1995) (citations omitted). The existence of a duty is a threshold question of law for the Court to decide based on several factors, "including the risk, foreseeability,

[1] Plaintiff titled the operative pleading "Plaintiff's Original Petition," (Dkt. #15) but this pleading was filed in response to the Court's order requiring Plaintiff—and giving him a chance—to file an amended complaint to comply with the federal pleading standards (Dkt. #14).

and likelihood of injury, and the consequences of placing the burden on the defendant." *Austin v. Kroger Tex. L.P.*, 746 F.3d 191, 198 (5th Cir. 2014). The Texas Supreme Court has distilled those factors to three categories: "(1) the relationship between the parties; (2) the reasonable foreseeability of harm to the person injured; and (3) public policy considerations." *See Tex. Home Mgmt., Inc. v. Peavy*, 89 S.W.3d 30, 33–34 (Tex. 2002). Here, Plaintiff asks the Court to impose a duty no other Texas court has done, but "[t]he decision to impose a new common law duty involves complex considerations of public policy including social, economic, and political questions and their application to the facts at hand." *Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 410 (Tex. 2009). Like Texas courts and other sister courts around the country have already decided, the Court finds that the law does not impose the duty requested on 24 Hour.

Texas law "imposes no duty to 'become [a] good Samaritan.'" *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 837 (Tex. 2001) (citations omitted); *Applebaum v. Nemon*, 678 S.W.2d 533, 535 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.) ("Deeply rooted in the common law is the doctrine that a person owes no duty to render aid to one for whose initial injury he is not liable."). But, if Decedent and 24 Hour were in a special relationship, 24 Hour would have the duty to aid and protect. *See Howell v. City Towing Assocs., Inc.*, 717 S.W.2d 729, 733 (Tex. App.—San Antonio 1986, writ ref'd n.r.e.) (citing RESTATEMENT (SECOND) OF TORTS § 314A (A.L.I. 1965)).

As a possessor of land who holds it open to the public, 24 Hour had a duty to aid or protect Decedent, 24 Hour's business invitee, because she entered in response to 24 Hour's invitation. *See* RESTATEMENT (SECOND) OF TORTS § 314A(3) (A.L.I. 1965). This duty required 24 Hour to give Decedent first aid after it knew or had reason to know that Decedent was injured and to care for them until they can be cared for by others. *See id.* § 314A(1)(b); *Applebaum*, 678 S.W.2d at 536

(holding that a defendant with a landowner-invitee relationship must "administer whatever initial aid he reasonably can and knows how to do"). Even though 24 Hour and Decedent had a special relationship that gave rise to a duty to provide aid, the duty was limited to certain forms of aid that do not require special training. *See Applebaum*, 678 S.W.2d at 537 (holding that Texas common law and Texas Legislature did not impose a duty requiring a day care center "to have medically trained employees who can administer CPR or some other type of life saving aid"); *but see Casey v. Tex. Racquet & Spa, Inc.*, No. 14-17-308-CV, 2018 WL 3911090, at *3 & n.2 (Tex. App.—Houston [14th Dist.] Aug. 16, 2018, pet. denied) (mem. op.) (recognizing that Texas legislature subsequently enacted 26 TEX. ADMIN CODE § 746.1315, requiring childcare centers to have caregivers trained in CPR).

Rather, 24 Hour's duty was limited to procuring medical assistance as soon as possible. *Applebaum*, 678 S.W.2d at 537; *Potter v. 24 Hour Fitness USA Inc.*, No. 3:12-CV-453, 2014 WL 11633691, at *4 (N.D. Tex. June 6, 2014), *aff'd*, 597 F. App'x 796 (5th Cir. 2015) (per curiam) (holding that, in a similar case where a gym patron suffered a cardiac event, 24 Hour did not owe a duty to either possess or administer an AED). As the Northern District court put it, "to impose [the duty to administer an AED] would graft additional requirements into Texas law that is better left to the Texas legislature for deciding," which they have done with childcare centers, but not fitness centers like 24 Hour. *Potter*, 2014 11633691, at *4. The Northern District is not alone in this holding as the Fifth Circuit affirmed on the issue of lack of duty, *Potter*, 597 F. App'x at 797. Other courts around the country, whose states have also adopted the Restatement (Second) of Torts, have similarly found that there is no duty to administer an AED. *See, e.g.*, *Verdugo v. Target Corp.*, 327 P.3d 774, 794 (Cal. 2014); *L.A. Fitness Int'l, LLC v. Mayer*, 980 So. 2d 550, 561–62 (Fla. Dist. Ct.

App. 2008); *Boller v. Robert W. Woodruff Arts Ctr., Inc.*, 716 S.E.2d 713, 716 (Ga. App. 2011); *Salte v. YMCA of Metro. Chi. Found.*, 814 N.E.2d 610, 615 (Ill. App. 2d Dist. 2004); *Rutnik v. Colonie Ctr. Ct. Club Inc.*, 249 A.D.2d 873, 875 (N.Y. App. Div. 3d Dept. 1998).

Under the Restatement's obligation to provide "first aid" to business invitees, "first aid requires no more assistance than that which can be provided by an untrained person." *L.A. Fitness*, 980 So. 2d at 559 (citation omitted). Comment f of the Restatement is illustrative: "in the case of an ill or injured person, [the defendant] will seldom be required to do more than give such first aid as he reasonably can, and take reasonable steps to turn the sick man over to a physician, or to those who will look after him and see that medical assistance is obtained." RESTATEMENT (SECOND) OF TORTS § 314A cmt. f (A.L.I. 1965) (citation modified). As the Florida court further elaborated:

> CPR, which requires training, is more than mere "first aid." Although the procedure for CPR is *relatively simple* and *widely known* as a major technique for saving lives, it nonetheless requires training and re-certification. Unlike first responders, for whom performing CPR is routine, non-medical employees certified in CPR remain *laymen*. . . .

*L.A. Fitness*, 980 So. 2d at 559. (emphasis added). If there is no duty for non-medical employees, who 24 Hour employs, to use the simple and widely known technique of CPR, then the law does not require the same employees to furnish and use an AED. *See id.*; *Potter*, 2014 WL 11633691, at *4; *Applebaum*, 678 S.W.3d at 537.

Here, 24 Hour's trainer satisfied its duty by assisting in the removal of Decedent from the pool and coordinating with EMS as they arrived to turn Decedent over to those who will see that medical assistance is obtained (Dkt. #30-9 at p. 25). While 24 Hour's trainer voluntarily performed CPR and directed another gym patron to retrieve the AED, which the patron was unable to retrieve for unknown reasons, he and 24 Hour were under no duty to do so (Dkt. #30-9 at p. 25). Like in *Potter*, Plaintiff has not presented any evidence that 24 Hour held itself out as prepared to

administer an AED to patrons or that it hired employees who were equipped to respond to cardiovascular emergencies, thus modifying the special relationship between Decedent and 24 Hour. *See Potter*, 2014 WL 11633691, at *4. Therefore, the Court finds that the common law does not impose a duty on 24 Hour to administer an AED.[2] Because there is no duty, Plaintiff's common law negligence claim fails as a matter of law, and the Court grants summary judgment with respect to Plaintiff's common law negligence claim against 24 Hour.

**B. Negligent Undertaking**

Plaintiff next asserts that 24 Hour independently assumed a duty to Decedent by undertaking a specific emergency-response system, which 24 Hour breached by failing to announce the Code Blue and have a coordinated team effort to retrieve and use the AED (Dkt. #30 at pp. 10-18, 20–22). Plaintiff attempts here to raise a negligent undertaking claim (Dkt. #30 at pp. 20–22, 26). But, to state a claim for negligent undertaking, Plaintiff must allege in his live pleading that: (1) 24 Hour undertook to perform services that it knew or should have known were necessary for the protection of others; (2) 24 Hour failed to exercise reasonable care in performing those services; and (3) Plaintiff either relied upon 24 Hour's performance or 24 Hour's performance increased Plaintiff's risk of harm. *See Barron v. United States*, 111 F.4th 667, 672–73 (5th Cir. 2024) (citing *Colonial Sav. Ass'n v. Taylor*, 544 S.W.2d 116, 119–20 (Tex. 1976)).

[2] While the Houston appellate court in dicta stated that it would not dwell on whether, following *Applebaum*, a defendant may be required to administer CPR—or other life-saving measures—to a plaintiff owed a duty of reasonable care under section 314A if the defendant "reasonably can and knows how to do it," because the plaintiff did not respond to the defendant asserting the same arguments here: no duty owed to administer an AED under the common law or created by the Texas legislature, the Court finds *Applebaum*, *Potter*, and the other decisions from around the country to be persuasive. *Casey*, 2018 WL 3911090, at *3 n.2. There is some truth to the assertion that a sudden cardiac event is more foreseeable in a fitness studio setting, *Verdugo*, 327 P.3d at 794 n.28, which impacts the duty analysis; however, the decision to impose a new common law duty is best left to Texas state courts and the Texas Legislature. The fact that the Fifth Circuit summarily affirmed *Potter* on the issue of duty additionally persuades the Court.

24 Hour argues that Plaintiff's negligent undertaking claim is not properly before the Court because "nowhere in Plaintiff's [live pleading] does Plaintiff include a cause of action for Negligent Undertaking or allege that 24 Hour voluntarily undertook any act or duty that either increased Decedent's risk of harm or induced her reliance" (Dkt. #35 at p. 2). "A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." *Barron*, 111 F.4th at 673 (quoting *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005)). While Plaintiff was not required to include the proper label of "Negligent Undertaking" in his live pleading, he still must plead each element of negligent undertaking. *See id.* Furthermore, federal pleading standards did not demand any "magic words" from Plaintiff, but Plaintiff was required to give fair notice of all claims brought against 24 Hour. *Id.* (citing *Boudreaux v. La. State Bar Ass'n*, 3 F.4th 748, 756 (5th Cir. 2021)).

Here, Plaintiff's live pleading lists the causes of action against 24 Hour as: Negligence, Negligence Per Se, Gross Negligence, and Premises Liability (Dkt. #15 at pp. 4–5, 7). Thus, Plaintiff did not include the proper label of "Negligent Undertaking" in his live pleading, but if Plaintiff pleaded the adequate facts and elements of negligent undertaking, then his claim may survive summary judgment. *See Barron*, 111 F.4th at 673. Here, Plaintiff alleges that 24 Hour committed acts of negligence, negligence per se, and gross negligence by:

a. Failing to properly train its employees;
b. Failing to properly supervise its employees;
c. Failing to hire, manage, train, and supervise competent employees;
d. Failing to timely and/or adequately react to Decedent's drowning;
e. Failing to timely and/or adequately respond to Decedent's drowning;
f. Failing to take appropriate and reasonable action to protect Decedent;
g. Failing to inspect, maintain, and repair the subject pool, pool area, enclosures, gates, and/or pool equipment;
h. Failing to inspect, maintain, and/or provide adequate safety equipment;
i. Failing to implement adequate safety policies and/or procedures;
j. Failing to enforce adequate safety policies and/or procedures;
k. Failing to comply with applicable ordinances, regulations, laws, and industry standards;
l. Vicariously liability for the acts and/or omissions of their employees;
m. Other acts and/or omissions that would be deemed negligent, negligent per se, and/or grossly negligent.

(Dkt. #15 at ¶ 15).

Plaintiff further alleges that 24 Hour, among other things, "exercised day-to-day control over the subject pool and pool area, including the safety policies, pool surveillance, employee training, emergency response, occupancy, and the condition and use of the pool, its equipment, enclosures, and appurtenances" (Dkt. #15 at ¶ 10). Absent in any of these recitations is the allegation that 24 Hour voluntarily undertook an act or duty, in which the failure to exercise reasonable care either increased Decedent's risk of harm or induced her reliance (*See* Dkt. #15 at pp. 3–5). *Colonial Sav. Ass'n*, 544 S.W.2d at 119–20; *Torrington*, 46 S.W.3d at 837–39. By contrast, Plaintiff has shown the ability to recite an element of negligent undertaking with respect to the dismissed Defendant Parker Central (*See* Dkt. #15 at ¶ 12). But, in denying Plaintiff's Motion to Remand, the Court previously noted the absence of facts or elements that

would support a negligent undertaking claim as to Parker Central (*See* Dkt. #18 at p. 9). The same applies here as to 24 Hour.

Consequently, Plaintiff has not satisfied his pleading obligation to properly raise a claim for negligent undertaking in his live pleading, which makes it raised only in response to a motion for summary judgment and not properly before the Court. *See Barron*, 111 F.4th at 673; *Xceed Mgmt. Grp., LLC v. AssuredPartners Aerospace, LLC*, No. 4:23-CV-690, 2024 WL 325661, at *5 (E.D. Tex. July 31, 2024) (citing *Cutrera*, 429 F.3d at 113).

That said, even if the Court were to consider Plaintiff's negligent undertaking claim, 24 Hour did not voluntarily assume a duty. Regardless of what 24 Hour's procedures require employees to do, a "company's internal policies or procedures will not create a negligence duty where none otherwise exists." *Cleveland Reg'l Med. Ctr. v. Celtic Props., L.C.*, 323 S.W.3d 322, 351 (Tex. App.—Beaumont 2010, pet. denied); *see FEE Transp. Servs., Inc. v. Fulgham*, 154 S.W.3d 84, 92 (Tex. 2004) ("[A] company's internal policies 'alone do not determine the governing standard of care.'"). Allowing internal policies to define the legal standard of care would penalize companies for adopting higher internal standards than the law requires. *Soto v. Danny Herman Trucking, Inc.*, No. 25-CV-1645, 2026 WL 2583159 at *7 (W.D. Tex. Aug. 31, 2026) (citing *Fulgham*, 154 S.W.3d at 92–93). That concern is evident here because 24 Hour has an internal policy to ensure its employees are trained and certified in CPR/AED. This goes above what the State of Texas requires (*See* Dkt. #28-12 at p. 3), which is to ensure that 911 has been called, place Decedent out of further harm's way, and assist in delivering Decedent to EMS. *See, e.g.*, *Applebaum*, 678 S.W.2d at 536–37; *Potter*, 2014 WL 11633691, at *4, *aff'd*, 597 F. App'x 796. Plaintiff's reading would hold 24 Hour liable but not a gym that refuses to implement similar policies, train employees, and acquire AEDs.

This would go against the public policy of encouraging businesses to go beyond the minimum that the law requires. *See Soto*, 2026 WL 2583159, at *7.

Plaintiff points to the Texas Supreme Court's decision in *VIA Metropolitan Transit v. Meck*, 620 S.W.3d 356, 368, 371–72 (Tex. 2020), for the proposition that 24 Hour's policies determine the standard of care. The Court disagrees. In *VIA*, the Texas Supreme Court was faced with determining whether deposition testimony by VIA could be sufficient evidence of whether VIA *breached* its standard of care when VIA's witnesses opined on how its actions compared to the *legal applicable standard of care* that its policies require. *See* 620 S.W.3d at 368, 371. Here, the deposition testimony Plaintiff tries to use for the same result compares the actions of 24 Hour's employees to 24 Hour's own internal policies alone, not the legal standard of care Texas requires (*See* Dkt. #30-1 at pp. 23–25; Dkt. #30-3 at pp. 13–14, 20).

Overall, the Court finds that 24 Hour did not voluntarily assume a duty to administer an AED to Decedent. Because there is no duty, Plaintiff's negligent undertaking claim fails as a matter of law, and the Court grants summary judgment with respect to Plaintiff's negligent undertaking claim against 24 Hour.

**C. Negligence Per Se**

Plaintiff additionally asserts that 24 Hour is liable to Decedent for breach of its duty through Negligence Per Se (Dkt. #15 at pp. 4–5). Negligence per se is not a separate cause of action that exists independently of a common law negligence action. *Zavala v. Trujillo*, 883 S.W.2d 242, 246 (Tex. App.—El Paso 1994, writ denied). It is merely one method of proving, through proof of an unexcused violation of a statute designed to protect the class of persons to which the injured party belongs, the breach of duty required in any negligence cause of action, which establishes negligence

as a matter of law. *See id.* (citing *Murray v. O & A Express, Inc.*, 630 S.W.2d 633, 636 (Tex. 1982)). The duty in a negligence per se action is based on the standard of conduct created by a statute rather than on the reasonably prudent test used in pure negligence claims. *See Smith v. Merritt*, 940 S.W.2d 602, 607 (Tex. 1997); *Ridgecrest Ret. v. Urban*, 135 S.W.2d 757, 762 (Tex. 2004); *Staggs v. Duncan*, No. 4-25-CV-4, 2025 WL 2070797, at *5 (E.D. Tex. July 23, 2025).

However, Plaintiff, relying upon a statutory violation, must plead this reliance and must further reasonably identify the statute relied upon if he is to recover on that basis. *Murray*, 630 S.W.2d at 636; *Daugherty v. S. Pa. Transp. Co.*, 772 S.W.2d 81, 83 (Tex. 1989). Accordingly, to state a cause of action for negligence per se under Texas law, Plaintiff must allege sufficient facts to establish: "(1) the defendant's act or omission is in violation of a statute or ordinance; (2) the injured person was within the class of persons which the ordinance was designed to protect; and (3) the defendant's act or omission proximately caused the injury." *Staggs*, 2025 WL 2070797, at *5 (citations omitted). "Without a citation to a statutory provision, the Court is unable to determine whether the facts alleged state a violation of any statute." *Id.* (citations omitted). The Court must be able to determine whether a particular statute may serve as a proper basis for a negligence per se claim. *Id.* Whether a negligence per se action may properly be predicated upon a particular statute is a question for courts to decide. *Id.* Thus, general allegations that a defendant violated a law without specifying which law will not suffice. *Id.* Such pleading neither allows the Court to perform its role, if so called upon, to ensure the statute is fitting for a negligence per se claim. *Id.* Nor does it allow a defendant to understand the allegations for which the plaintiff seeks damages. *Id.*

Turning to Plaintiff's First Amended Complaint, the Court finds that it is not sufficient. Nowhere in Plaintiff's live pleading does he indicate a particular statutory provision upon which his negligence per se claim is predicated on (*See* Dkt. #15 at p. 5). Neither does Plaintiff's First Amended Complaint attempt to plead that he is a member of a class protected by a particular statue, nor that whatever statute he believes Defendant violated imposed a duty of care greater than the ordinarily prudent person standard, as he must. *Staggs*, 2025 WL 2070797, at *5 (citation omitted). Instead, Plaintiff made general allegations that 24 Hour violated a law without specifying any law Defendant violated (*See* Dkt. #15 at p. 5). *Staggs*, 2025 WL 2070797, at *5.

As the Court noted in its Memorandum Opinion and Order denying Plaintiff's Motion to Remand, Plaintiff was given the opportunity to amend its live pleading to better conform to the federal standards but succeeded only in adding descriptive fluff to conclusory statements and vague accusations (Dkt. #18 at pp. 14–15). Additionally, the Court's scheduling order, which Plaintiff agreed to, permitted Plaintiff to amend his live pleading up to April 24, 2026 (Dkt. #13), which would have given him twenty-four days from the Court's Memorandum Opinion and Order denying his Motion to Remand to better conform to his pleading obligations (Dkt. #18).

Instead, Plaintiff in his Response argues that factual disputes preclude summary judgment on negligence per se (Dkt. #30 at p. 22). He cites Plano ordinances and the Texas Admin Code as evidence that 24 Hour inexcusably violated a statute that protects a class of people that include Decedent from the type of injury that occurred (Dkt. #30 at p. 22). However, there is no mention of these laws in Plaintiff's live pleading, which he was required to plead. *See Murray*, 630 S.W.2d at 636; *Staggs*, 2025 WL 2070797, at *5.

Nevertheless, even if the Court were to consider these laws, Plaintiff has offered no competent summary judgment evidence to rebut 24 Hour's evidence that it did not violate Plano Code of Ordinances and the Texas Admin Code. Section 6-453(b) of the Plano Code of Ordinances required 24 Hour to have an emergency-summoning device within 150 feet of the pool and a sign in plain view of the pool that stated "[i]n case of emergency, call 911." Plano, Tex., Plano Code of Ordinances, ch. 6, § 6-453(b) (2019). It is undisputed that 24 Hour had both the phone and the signs (Dkt. #35-1). As the owner/operator of the pool, 24 Hour was also responsible for sanitation, safety, and proper maintenance of the facility and all physical and mechanical equipment. Plano, Tex., Plano Code of Ordinances, ch. 6, § 6-454(b) (2019). Section 265.190(h) of the Texas Admin Code is equivalent to the Plano Code of Ordinances and required 24 Hour to have an emergency device capable of immediately summoning emergency services within 200 feet of the pool and functioning when the pool or spa is open for use. 25 TEX. ADMIN. CODE § 265.190(h). Here, 24 Hour established through the testimony of its District Repair and Maintenance Manager that the phone by the pool is tested daily to ensure that it can call out to 911 (Dkt. #35-6).

The only evidence Plaintiff offers to show that 24 Hour violated these laws is the testimony of the patron who first spotted Decedent and attempted to remove her from the pool. In her deposition, she testified that she yelled at another patron to get some help (Dkt. #35-5). This other patron then went to use the phone but had "no luck there" and "ran out to the floor to go get personnel" (Dkt. #35-5). In response to Plaintiff's counsel asking her that "[other patron] tried to use [the phone], but it did[] not really work, so he took off, right," she testified "[u]h-huh" (Dkt. #35-5). She further testified that she heard beeping from the phone (Dkt. #30 at pp. 9–10). However, earlier, she added on to what she meant by "no luck there" and the beeping sound she

heard by testifying that "maybe in his panicked state, he did[] not dial right" (Dkt. #35-5). Her response of "[u]h-huh" was merely an agreement with counsel's characterization, not testimony that the phone was defective. While she heard beeping, she admitted that the other person was in a panicked state and maybe did not dial right (Dkt. #35-5). She did not talk to the other patron and he was never deposed, so her speculation of what happened with the phone is the only evidence Plaintiff has offered.

On one hand, Plaintiff has offered no evidence to show that the phone was inspected after the incident and found to be defective, nor any evidence establishing a mechanical or operational defect in the phone itself. On the other hand, 24 Hour has offered competent summary judgment evidence through the testimony of the District Repair and Maintenance Manager that the phone is tested daily before 24 Hour opens the pool (Dkt. #35-6). As a matter of law, Plaintiff cannot establish that 24 Hour violated the laws that form the basis of negligence per se liability.

Furthermore, as a matter of law, Plaintiff cannot establish causation. As the surveillance footage, Plano EMS records, and Plaintiff's own statement of the facts show, it took about five minutes for EMS to arrive after receiving the 911 call (Dkt. #28, at p. 14 n.14; Dkt. #30 at pp. 8–9; Dkt. #35-9). Plaintiff nor his experts have identified any evidence that shows any alleged telephone issue caused any material delay in EMS's response (*See* Dkt. #30 at p. 23; Dkt. #28-15 at pp. 3–6; Dkt. #28-16 at pp. 4–5; Dkt. #28-17 at pp. 4–12; Dkt. #28-18 at pp. 4–9). In fact, one of Plaintiff's experts performed a site visit, tested the phone, and found it operational (Dkt. #28-18 at p. 6). Plaintiff's mere denials of material facts, unsworn allegations, or conclusory allegations are not competent summary judgment evidence, and are therefore insufficient to carry Plaintiff's burden

to defeat a motion for summary judgment. *See Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992).

Plaintiff did not carry his obligation to properly plead negligence per se. Further, Plaintiff has not offered evidence to rebut 24 Hour's conclusive evidence negating breach and causation. Therefore, Plaintiff's negligence per se claim fails as a matter of law, and the Court grants summary judgment with respect to Plaintiff's negligence per se claim against 24 Hour.

**D. Gross Negligence**

Plaintiff argues that fact disputes remain as to his gross negligence claim (Dkt. #30 at pp. 30–32), but 24 Hour argues that Plaintiff's gross negligence claim fails as a matter of law because Plaintiff lacks proof of ordinary negligence (Dkt. #28 at p. 36). The Court agrees with 24 Hour.

Establishing gross negligence requires proof of two elements: (1) viewed objectively from the actor's standpoint, the act or omission must involve "an extreme degree of risk, considering the probability and magnitude of the potential harm to others;" and (2) the actor must have "actual, subjective awareness of the risk involved, but nevertheless proceed with conscious indifference to the rights, safety, or welfare of others." TEX. CIV. PRAC. & REM. CODE § 41.001(11); *In re Oncor Elec. Delivery Co. LLC*, 716 S.W.3d 525, 532 (Tex. 2025).

Nevertheless, a prerequisite to a finding of gross negligence is a finding of ordinary negligence. *Soto*, 2026 WL 25831359, at *3 (citation omitted); *Wortham v. Dow Chem. Co.*, 179 S.W.3d 189, 201 n.16 (Tex. App.—Houston [14th Dist. 2005, no pet.) ("A plaintiff who cannot support a cause of action for negligence cannot recover for gross negligence because a finding of ordinary negligence is a prerequisite to a finding of gross negligence."). Gross negligence requires

more than mere ordinary negligence. *Medina v. Zuniga*, 593 S.W.3d 238, 249 (Tex. 2019). Gross negligence must remain "functionally distinguishable from ordinary negligence." *Id.*

Here, Plaintiff cannot establish that 24 Hour is even liable to him for ordinary negligence because 24 Hour did not owe the legal duty Plaintiff alleges that 24 Hour breached. *See supra* Part II.A–C. If Plaintiff cannot prove that 24 Hour breached a duty, then Plaintiff, similarly, cannot prove that 24 Hour breached a duty wantonly or willfully. *See Marsillo v. Dunnick*, 683 S.W.3d 387, 393 (Tex. 2023). As the Court discusses below, Plaintiff's premises liability claim, which could support a finding of gross negligence, is a disguised negligent undertaking claim and without merit. Therefore, the Court grants summary judgment with respect to Plaintiff's gross negligence claim against 24 Hour.

## III. Premises Liability v. Negligent Undertaking

Plaintiff's final cause of action against 24 Hour is based on premises liability (Dkt. #15 at p. 7). 24 Hour argues that summary judgment on Plaintiff's premises liability claim is warranted in its favor because Plaintiff cannot establish the existence of an unreasonably dangerous condition, and Plaintiff's real claim is negligent activity, not premises liability (Dkt. #28 at p. 28). For the reasons set forth below, the Court agrees with 24 Hour.

Under Texas law, the elements of a premises liability claim when the injured party is an invitee are: (1) the owner had actual or constructive knowledge of a condition on the premises; (2) the condition posed an unreasonable risk of harm; (3) the owner failed to exercise reasonable care to reduce or eliminate the risk; and (4) the owner's failure proximately caused the plaintiff's injuries. *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 99 (Tex. 2000). In Plaintiff's live pleading, Plaintiff alleges that the swimming area was an unsafe condition and unreasonably dangerous, that

24 Hour knew or should have known about, and it directly and proximately caused Decedent's injuries and death (Dkt. #15 at p. 7, ¶¶ 22–24).

Despite this pleading, Plaintiff's claims actually revolve around 24 Hour's failure to announce the Code Blue, retrieve and use an AED, and have employees constantly monitor the pool, which are claims based in negligent activity. Under Texas law, negligent activity and premises liability are separate claims. *Estate of Newton ex rel. Newton v. Grandstaff*, No. 3:10-CV-809, 2013 WL 230252, at *7 (N.D. Tex. Jan. 18, 2013). In a negligent activity case, "a property owner must 'do what a person of ordinary prudence in the same or similar circumstances would have . . . done,' whereas a property owner or occupier in a premises liability case must 'use ordinary care to reduce or eliminate an unreasonable risk of harm created by a premises condition which the owner or occupier [of land] knows about or in the exercise of ordinary care should know about.'" *United Scaffolding, Inc. v. Levine*, 537 S.W.3d 463, 471 (Tex. 2017) (citation omitted). "Underpinning the distinctions between these claims is the principle that 'negligent activity encompasses a malfeasance theory based on affirmative, contemporaneous conduct by the owner that caused the injury, while premises liability encompasses a nonfeasance theory based on the owner's failure to take measures to make the property safe.'" *Id.* (citation omitted).

While Plaintiff dedicates one footnote in his response to identify the allegedly nonfunctioning emergency phone as the dangerous condition (Dkt. #30 at p. 23 n.10), the summary judgment evidence from 24 Hour establishes that 24 Hour tested the phone daily to ensure it works before opening the pool (*See* Dkt. #35-6). Conversely, as discussed above on negligence per se, Plaintiff identifies no summary judgment evidence to rebut this other than

speculation by an eyewitness that a bystander, who has not been deposed, tried to call 911 on the pool's phone but it did not work (*See* Dkt. #35-5 at pp. 2–3).

In any event, mere denials of material facts, unsworn allegations, or conclusory allegations are not competent summary judgment evidence, and are therefore insufficient to carry Plaintiff's burden to defeat a motion for summary judgment. *See Topalian*, 954 F.2d at 1131. Plaintiff has not identified a dangerous condition, which is a prerequisite to a premises liability claim. Plaintiff's claim sounds in negligent activity, which the Court has already found to fail as a matter of law. *See supra* Part II.B. Therefore, the Court grants summary judgment with respect to Plaintiff's premises liability claim against 24 Hour.

* * *

## IV. Recap

Overall, summary judgment is warranted in 24 Hour's favor on Plaintiff's claims because (1) 24 Hour did not owe a duty under the common law to render the aid Plaintiff argues it should have provided; (2) Plaintiff did not identify a statute on which negligence per se liability could be based on in his live pleading nor can he prove breach or causation with the statutes he identifies in his response; (3) Plaintiff's premises liability claim is negated by 24 Hour's conclusive evidence and otherwise fails as a matter of law; and (4) without a finding of liability on negligence, negligence per se, or premises liability/negligent undertaking, a finding of gross negligence cannot be supported. Because the Court grants summary judgment on these grounds, it need not address whether summary judgment is warranted on the limitation of liability clause in Decedent's membership agreement.

## CONCLUSION

It is therefore **ORDERED** that Defendant 24 Hour Fitness USA, LLC's Motion for Summary Judgment (Dkt. #28) is hereby **GRANTED**.

It is further **ORDERED** that all claims against Defendant 24 Hour Fitness USA, LLC are hereby **DISMISSED** with prejudice.

It is further **ORDERED** that Defendant 24 Hour Fitness USA, LLC is hereby **DISMISSED**.

**IT IS SO ORDERED.**

**SIGNED this 21st day of October, 2026.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE